UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 09 CR 269** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Faisal Alatrash,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon defendant Faisal Alatrash's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 148). For the following reasons the motion is DENIED.

**FACTS**

Defendant, Faisal Alatrash, was convicted by a jury of various counts in connection with his role in a bribery scheme while acting as Project Manager for the Greater Cleveland Regional Transit Authority. Defendant appealed to the Sixth Circuit, which affirmed his convictions in all respects. Defendant now moves for collateral review on the grounds that his counsel was

ineffective both at the trial and appellate stages. Each argument will be addressed in turn.

### **ANALYSIS**

In order to succeed in establishing ineffective assistance of counsel, petitioner must demonstrate that "(1) his attorney's performance was outside the range of competence demanded of attorneys in the criminal context, and (2) the professionally unreasonable performance prejudiced him." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). Judicial scrutiny of attorney performance is highly deferential and "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. In other words, "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. Thus, only "strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel." *United States v. Medved*, 905 F.2d 935, 942 (6th Cir. 1990)(citations and quotations omitted).

1.  Adequacy of investigation

Defendant argues that counsel was ineffective in failing to interview all of the potential defense witnesses. According to defendant, his attorney did not interview: Joe Calabrese, Michael Cuddy, Dale Griffis, Emmanel Hazidrosos, Will Rivera, Waheed Tadross, Michael Vitt, and Randy Young. As an initial matter, it appears that defendant is incorrect with respect to at least two of these witnesses. Defendant's own affidavit establishes that the investigator retained

by defense counsel interviewed Waheed Tadross (ECF 149-2 at PageID 2091 ¶5) and that counsel himself interviewed Michael Vitt (*Id*. At PageID 2137). According to defendant, these witnesses would have testified that "in all of their years of involvement with [defendant], never once did they directly or indirectly suspect or know of [defendant] acting in an unethical or illegal manner in the administration of RTA construction projects." In addition, defendant believes these individuals would have testified that defendant did not intend to bribe anyone. Defendant further claims that these witnesses would have testified as to defendant's intent regarding L&J Cleaning and the legitimacy of the business.

Upon review, the Court agrees with the government that trial counsel's performance did not fall below the *Strickland* standard in declining to interview these witnesses. As an initial matter, the Court is not convinced that most of this evidence would be admissible in any event. There is no indication that any of these witnesses would be competent to testify regarding defendant's *intent* as to the bribery charges or the use of L&J Cleaning. Moreover, even if these individuals could have testified regarding defendant's lack of criminal behavior in other projects, the Court finds that no prejudice resulted. At best, the evidence tenuously showed that *sometimes* defendant did not act in a criminal manner. Accordingly, any alleged failure to interview these witnesses caused defendant no discernable prejudice.[1]

This same reasoning applies to defendant's argument that counsel's performance was deficient for failing to call certain witnesses at trial. In essence, defendant generally argues that

---

[1] The Court notes that defendant's own affidavits establish that counsel and the retained investigator interviewed a great number of other witnesses during the investigatory and trial phase of this case. In fact, defendant himself classifies the investigator's interview of Gregory Johnson as "in depth."

the information addressed above would have assisted him in his defense had witnesses been called to so testify. Defendant relies specifically on the witness interview report of Gregory Johnson. According to defendant, Johnson would have testified that he and defendant had an intimate working relationship and never once did Johnson suspect defendant of pressuring contractors. In addition, defendant claims that Johnson would have testified "as to the reputations of Nick Iafigliola" and that "[defendant] lacked the specific intent to commit a bribery offense" as it relates to L&J Cleaning. Defendant makes similar arguments with respect to other witnesses not called by the defense. Upon review, however, the Court finds that this specific information is likely inadmissible for the same reasons discussed above. For example, defendant argues that Johnson would have testified that he never suspected defendant of pressuring contractors. His lack of criminal conduct in one instance, however, does not negate criminal conduct in a different instance. Moreover, Johnson would not have been permitted to testify that defendant "lacked the specific intent" to commit a crime. In all, the Court cannot say that the decision not to call Johnson or the other witnesses identified by defendant fell "outside the range of competence demanded of attorneys in the criminal context." Accordingly, the Court rejects defendant's argument.

Moreover, counsel for defendant avers that he believed that testimony from defense witnesses and from defendant himself would harm the cause. Rather, counsel and defendant, along with defendant's family, discussed whether to put on a defense or, instead, rest on the government's failure to meet the burden of proof. This decision was made without regard to admissibility issues. The Court cannot say that this decision fell below the *Strickland* standard.

In his reply brief, defendant argues that had he known that much of the "good acts"

4

testimony would be inadmissible, he would have accepted the government's plea offer. As an initial matter, this argument is raised for the first time in a reply brief. Regardless, however, the argument lacks merit. Counsel for defendant avers that he discussed with defendant general admissibility issues and the fact that no decision would be made as to whether to call witnesses until late in the case. Counsel indicates that defendant was adamant that he would not consider a plea because he did not commit the crime. This is consistent with an email defendant sent to counsel regarding closing arguments. Defendant inquired as to whether counsel could inform the jury that "[defendant] was offered a plea agreement and turned it down because he knew he was innocent." This is inconsistent with defendant's new argument that he would have accepted a plea had he known about admissibility issues that might later arise.

Defendant also complains because counsel chose not to call his relatives as witnesses to explain cash bank deposits made into defendant's bank account. According to defendant, his relatives would have testified that they brought cash with them from Syria and gave the cash to defendant. Defendant claims this would undercut the government's argument that the unexplained cash deposits were the result of bribes. The Court agrees with the government, however, that this strategic decision falls short of establishing a constitutional violation. According to the government, there are no currency reports supporting the influx of cash from Syria. As such, the witnesses would have been subject to a difficult cross-examination which may have led to credibility issues or self-incriminating testimony. Moreover, as noted in the affidavit provided to the Court by defendant's trial counsel, the claimed cash amounts did not correlate to the cash deposits made into defendant's account. In all, strategic reasons exist for deciding not to call these family witnesses.

2. Trial performance

Defendant argues that counsel was ineffective during jury selection for failing to use peremptory challenges to remove two jurors who indicated that they had "ties to law enforcement." The argument is rejected. Trial counsel indicates that these prospective jurors were candid in their responses and nothing in their background indicated that any tie to law enforcement would render them incapable of discharging their duties as jurors. There is simply nothing suggesting that counsel was in any way ineffective for failing to use peremptory challenges to remove these jurors from the jury pool.

Defendant next argues that trial counsel was ineffective in conducting cross-examinations of five government witnesses. Defendant then provides the Court with a list of 47 "facts" that counsel allegedly failed to elicit during cross-examination. As an initial matter, the Court notes that many of defendant's complaints are unfounded because his attorney did in fact elicit the information he claims is lacking in the testimony. For example, defendant claims that his attorney did not establish that Iafigliola testified under a grant of immunity. Yet, a cursory review of the record establishes that defendant is incorrect. *See*, Trial Tarnscript, ECF 75, at PAGE ID 1094-95 (testifying that he appeared under a grant of immunity and could not be prosecuted). Similarly, defendant complains at length that his attorney failed to establish that witness Roditis "had a serious gambling problem in Cleveland." Defendant complains that his attorney should have subpoenaed the witness's bookie as well as casino records from Las Vegas. While counsel may not have gone to the ends of the earth, the cross-examination certainly established that the witness: traveled to Las Vegas, borrowed money to bet, bet more money than he had, incurred gambling debts, and used a bookie to bet on football in Cleveland. *See*, Trial

6

Transcript, ECF 74, at PAGE ID 942-46.  Counsel was by no means ineffective for failing to obtain the specifics sought by defendant.  Many of the issues defendant raises in connection with the cross-examination go to very specific sub-questions related to topics that were in fact covered by counsel.[2]  The Court has reviewed all of the objections as well as the transcripts of the cross-examinations and finds that defendant fails to point to any specific failure on the part of counsel that would rise to the level of ineffective assistance.  *See, United States v. Munoz*, 605 F.3d 359 (6th Cir. 2010)(noting that cases cited by petitioner as grounds for an ineffective assistance of counsel claim are "clearly distinguishable...in that they involve the failure to cross-examine altogether, or the failure to bring up glaringly obvious grounds for impeachment.").

Defendant next argues that counsel's failure to present any defense and to instead rely solely on cross-examination amounted to ineffective assistance of counsel.  In essence, defendant reargues the issues he raised in the context of counsel's decision not to call certain witnesses.  Defendant claims that counsel should have presented the testimony of his family members and Gregory Johnson.  For the same reasons set forth above, counsel's decision not to call these witnesses (and thereby rely on cross-examination) does not amount to ineffective assistance of counsel.

Next defendant argues that counsel was ineffective for "allowing, at trial, the introduction of tape recordings and associated transcripts."  Defendant argues that counsel failed to object to the introduction of certain videotapes and the transcripts thereof.  In addition, defendant appears to argue that defendant should have requested a limiting instruction regarding the transcripts.

---

[2] In addition, defendant's counsel provides an affidavit indicating that some of the specific details (if they are accurate) were not known to counsel at the time of the questioning.

Upon review, the argument is rejected. As the government points out, the parties (including defendant himself) signed a stipulation as to the authenticity and admissibility of the recordings. The stipulation further provides that the transcripts are accurate and may be used by the jurors as an aid in listening to the recordings. Moreover, the government withdrew its request to allow the transcripts to go back to the jury room.[3] Regardless, petitioner fails to present any evidence supporting the belief that the videotapes were inadmissable. Any argument that counsel was somehow ineffective is rejected.

The Court also rejects defendant's argument that counsel was ineffective for failing to object to the "dual theory" instruction. The issue of the "dual theory" jury instruction was addressed on direct appeal and the Sixth Circuit determined that the jury instructions were not contrary to *Skilling v. United States*, 130 S.Ct. 2896 (2010). Assuming this issue is even subject to collateral review, in light of the Sixth Circuit's ruling, the Court finds that counsel was not ineffective for failing to object to the jury instruction on the grounds that it violated *Skilling*. Moreover, it appears from defendant's reply brief that he is waiving this issue.

Defendant next argues that counsel was ineffective at sentencing. Specifically, defendant argues that counsel should have argued that payments made to L&J Cleaning should not have been included in the loss calculation and that counsel's failure to develop a record as to the amount of such payments constituted ineffective assistance of counsel. According to defendant, these payments were for legitimate services. In addition, defendant argues that counsel failed to

---

[3] Defendant avers that his signature on the stipulation is forged. The original stipulation was provided directly to the Court during the proceedings and is in the file in the Clerk's Office. The Court reviewed the stipulation and will place it on the docket.

8

object to the government's presentation of exhibits purporting to show the loss amount. Upon review, however, the Court notes that counsel did in fact make objections to the manner in which the Court calculated the loss. Specifically, counsel argued that the payments were for legitimate cleaning services and, therefore, should not be included in the amount of loss. (See, e.g., ECF 82, Sentencing Memorandum at p.4). In fact, the Sentencing Memorandum contains extensive objections regarding the calculation of the loss amount. Although the Court ultimately rejected defendant's arguments, the Court finds that counsel's actions do not rise to the level of ineffective assistance of counsel.

Defendant further argues that counsel failed to object to the Court's determination that the loss amount exceeded the restitution amount. As the government points out, however, these two calculations are different. Therefore, the Court cannot say that counsel's failure to object simply because the two amounts are different constitutes ineffective assistance of counsel.

The Court also rejects defendant's generalized argument that counsel's failure to object to "improper adjustments and/or enhancements" and that the objection was "weak, confusing, and incorrect as a matter of law." This unsupported argument does not establish that defendant is entitled to relief.

3. Appellate counsel

Defendant argues that appellate counsel was ineffective for failing to raise certain issues on appeal. According to defendant, appellate counsel should have argued that: the district court's dual theory of liability" jury instruction was erroneous; the district court erred in ascertaining the amount of loss; and trial counsel was ineffective. These arguments are rejected. As an initial matter, appellate counsel did in fact raise the issue of the "dual theory of liability"

9

jury instruction on direct appeal.  Moreover, the Sixth Circuit has repeatedly held that claims for ineffective assistance of trial counsel are better adjudicated by the trial court on collateral review.  In addition, as pointed out by the government, determinations of "loss amount" are reviewed for clear error.  *United States v. Abdullah*, 162 F.3d 897, 906 (6th Cir. 1998)(indicating that determining amout of taxes evaded is a factual determination reviewed for clear error).  Defendant fails to show a likelihood that the Sixth Circuit would have reversed this Court's determination as to the loss amount.  Therefore, counsel was not ineffective for choosing not to raise this issue.

### **CERTIFICATION OF APPEALABILITY**

28 U.S.C. § 2253(c) provides:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

*(B) the final order in a proceeding under section 2255.*

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

(emphasis added).

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court determined that

[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

For the reasons stated herein, the Court does not find that petitioner has made a substantial showing of the denial of a constitutional right.  Accordingly, defendant is not entitled to a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, defendant Faisal Alatrash's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 148) is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/23/13